<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>GREGORY MIMS,<br><br>                Defendant, | Case No. 2:19-cr-00527 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Compassionate Release filed by Defendant Gregory Mims ("Mims") under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 106.) Plaintiff, the United States of America (the "Government"), opposed the motion. (ECF No. 107.) Mims filed a Reply (ECF No. 108) and a Letter (ECF No. 110) in support of its motion. Having reviewed the parties' submissions filed in connection with the motion and having heard oral argument on November 19, 2020 (ECF No. 109), for the reasons set forth below and for good cause having been shown, Mims's Motion for Compassionate Release is **DENIED**.

**I.     BACKGROUND**

On July 25, 2019, Mims pleaded guilty to an information charging him with conspiracy to distribute more than 100 grams of heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and in violation of 21 U.S.C. § 846, for his conducts occurring between December 2017 and May 2018. (ECF No. 89.) Mims was involved in his older brother Andre Mims's drug trafficking conspiracy. (ECF No. 106 at 2.)

At sentencing, Mims faced a guideline range of 60 months based on the statutory mandatory minimum term of five years under U.S.S.G. § 5G1.1(b). (*Id.* at 3.) Without the minimum, Mims would have faced a guideline range of 46 to 57 months, based on a total offense level of 21, and a criminal history category of III. (*Id.*) At sentencing, Mims was 44 years old, and had four criminal history points: (1) one point for wandering in a public place for the purpose of CDS (offense committed in 1996), for which he received a $100 fine; (2) two points for possession of cocaine and with intent to distribute (offense committed in 2005) for which he was sentenced to two years of probation; and (3) one point for possession of cocaine (offense committed in 2010) for which he was sentenced to three years of probation. (*Id.* at 3 n.1.)

On November 25, 2019, Mims was sentenced to 60 months' imprisonment, followed by four years of supervised release, with special conditions requiring drug testing and treatment, mental health treatment, life skills/education, motor vehicle compliance, and supporting dependents. (ECF No. 92 at 2–3.) Mims reported to the Bureau of Prisons ("BOP") on January 7, 2020. (ECF No. 106 at 3.) His projected release date is March 28, 2024. (*Id.*) By the time of his Motion, Mims had served 19.5% of his sentence, with 41 months more to serve. (*Id.*) Mims is currently housed at FCI Danbury. (*Id.*)

On July 2, 2020, Mims filed a request for compassionate release and release to home confinement with the warden at FCI Danbury. (*Id.* at 5.) On July 6, 2020, a BOP warden denied that request. (*Id.*) A second request for release to home confinement, pursuant to a class-action habeas corpus suit with FCI Danbury, was denied on October 6, 2020. (*Id.*) On October 28, 2020, Mims filed this Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 106.) Mims claims the current novel coronavirus ("COVID-19") pandemic, the grave risk that imprisoned people will contract it and suffer worse consequences as a result of their imprisoned

status, combined with Mims' illnesses—morbid obesity, hypertension, asthma, and undiagnosed diabetes—constitute extraordinary and compelling reasons for his compassionate release. (*Id.* at 2.) On November 9, 2020, the Government opposed the motion. (ECF No. 107.) On November 16, 2020, Mims filed a Reply to the Government's opposition. (ECF No. 108.) On December 23, 2020, Mims filed a Letter informing the Court of the current situation at FCI Danbury. (ECF No. 110.)

## II.     LEGAL STANDARD

"18 U.S.C. § 3582(c)(2) governs modification of sentences in the case that a sentencing guideline has been changed." *United States v. Ortiz-Vega*, 744 F.3d 869, 871 (3d Cir. 2014). "It provides an exception to the normal rule, 18 U.S.C. § 3582(c), that a court may not modify a term of imprisonment once it has been imposed." *Id*. Relevant here is 18 U.S.C. § 3582(c)(1)(A)(i), which allows a motion for compassionate release to be brought by either the Director of the BOP or the defendant, after the defendant has exhausted the administrative remedies. § 3582(c)(1)(A)(i). A court may reduce the defendant's sentence, if the court finds: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate that reducing the defendant's sentence would be appropriate. *Id*.

"[T]he statute itself does not define the key terms 'extraordinary and compelling,' apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release." *United States v. Farlow*, Crim. No. 18-044, 2021 U.S. Dist. LEXIS 61502, at *4 (D.N.J. Mar. 30, 2021). "Where the Sentencing Commission has published an applicable policy statement, courts will consult the statement as 'helpful guidance' on the circumstances which rise to reasons warranting relief under § 3582(c)(1)(A)." *Id*.

3

at *4–5 (citations omitted). But the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. McNair*, 481 F. Supp. 3d 362, 369 (D.N.J. 2000) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)).

Under the policy statement, certain medical conditions may qualify as "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(a)(i) and (ii). They include a terminal illness, such as "metastatic solid-tumor cancer," and "a serious physical or medication condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

In seeking a compassionate release, the defendant "bears the burden" of proving "compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. A. No. 10-434, 2020 U.S. Dist. LEXIS 72991, at *2 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). The defendant "bears the burden of proof by a preponderance of the evidence." *United States v. Evans*, Crim. A. No. 13-173, 2020 U.S. Dist. LEXIS 193430, at *6 (W.D. Pa. Oct. 20, 2020) (citations omitted).

### III. DECISION

As a threshold matter, the parties agreed in the oral argument that this Court had the authority to hear this matter and grant the relief Mims is seeking, and that Mims satisfied the statutory exhaustion requirement. Draft Tr. Nov. 19, 2020, Oral Arg. With this agreement, the Court turns to the substance of Mims's motion.

"The 'extraordinary and compelling reasons' inquiry logically has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with

particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, Crim. A. No. 19-101, 2020 U.S. Dist. LEXIS 132220, at *7 (D.N.J. July 27, 2020). As illustrated below, the analysis of the two components does not reveal extraordinary and compelling reasons for granting Mims's compassionate release.

      **A.**    **Mims's Medical Conditions Do Not Make Him Particularly Vulnerable to COVID-19**

The Government maintains Mims's obesity does not support a sentence reduction. (ECF No. 107 at 7.) Mims claims his illnesses constitute a compelling and extraordinary threat to his health and safety during the COVID-19 pandemic. (ECF No. 106 at 10.) The Court disagrees.

For the first component, an inmate seeking a compassionate release "typically must show that he has a medical condition that puts him at increased risk for severe illness or complications from COVID-19." *United States v. Adams*, Crim. A. No. 00-697, 2020 U.S. Dist. LEXIS 190133, at *14 (D.N.J. Oct. 14, 2020) (citations omitted). Courts generally defer to the Centers for Disease Control and Prevention's ("CDC") list of underlying medical conditions that place "people at increased risk of severe illness from COVID-19," to "determin[e] whether extraordinary and compelling reasons exist in COVID-19 compassionate release cases." *United States v. Henderson*, Crim. A. No. 15-0329, 2020 U.S. Dist. LEXIS 156060, at *8–9 (D.N.J. Aug. 26, 2020).

Upon filing this motion, Mims was less than fifty years old, not at an advanced age with the greatest risk for severe illness from COVID-19.[1] Mims tested negative twice for COVID-19 on May 27, 2020, and August 6, 2020, at FCI Danbury. (ECF No. 107 at 5.) Also, in the oral argument, the parties agreed: (1) Mims suffered from morbid obesity, hypertension, asthma, and

---

[1] "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older." CDC, *Older Adults* (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

5

bordered on, though not diagnosed with, diabetes; and (2) the CDC recognized obesity, but not other illnesses of Mims, as a comorbidity factor for COVID-19. Draft Tr. Nov. 19, 2020, Oral Arg. Because obesity is the only risk factor that Mims can assert, Mims' medical conditions do not give rise to an extraordinary and compelling reason for compassionate release. *United States v. Warrington*, Crim. A. No. 18-179, 2021 U.S. Dist. LEXIS 40603, at *11 (D.N.J. Mar. 4, 2021) (citations omitted) ("[O]besity, on its own, has been regularly rejected as an extraordinary and compelling reason justifying compassionate release."); *see also United States v. Dunich-Kolb*, Crim. A. No. 14-150, 2020 U.S. Dist. LEXIS 208120, at *12 (D.N.J. Nov. 5, 2020) (citations omitted) ("[A]ctual obesity, not accompanied by other risk factors (such as advanced age or [chronic obstructive pulmonary disease]), has regularly been rejected as grounds for compassionate release."); *United States v. Jimenez*, Crim. A. No. 15-87, 2020 U.S. Dist. LEXIS 184455, at *5 (D.N.J. Oct. 5, 2020) (citations omitted) ("Multiple courts in this District have denied compassionate release to inmates suffering from obesity and/or hypertension, despite the risk of COVID-19."). Although Mims' obesity is severe, which represents an increased risk with COVID-19 illnesses,[2] his BMI dropped significantly in a short period since Mims started incarceration, from 46.48 in January 2020 down to 41.32 in July 2020. (ECF No. 106 at 20.) In other words, Mims' only comorbidity factor is becoming less life-threatening.

Therefore, Mims's medical conditions do not support finding extraordinary and compelling reasons for compassionate release.

### B.   There Is Not a High Risk of COVID-19 Infection at FCI Danbury

---

[2] Severe obesity is defined by a body mass index ("BMI") of 40 or higher, and the risk of severe COVID-19 illness increases sharply with elevated BMI. CDC, *Defining Adult Obesity* (last visited June 10, 2021), https://www.cdc.gov/obesity/adult/defining.html.

      **1.**      **FCI Danbury Has Taken Reasonable Measures Against the Spread of COVID-19**

The Government insists the BOP has adequately addressed the risks of the spread of COVID-19, by taking a number of steps to protect the safety and security of all staff and inmates, as well as visitors and members of the public. (ECF No. 107 at 12–13.) The Government claims, as of November 9, 2020, there were no active COVID-19 cases at FCI Danbury. (*Id.* at 9.) Mims counters the conditions at FCI Danbury make him even more vulnerable to contracting COVID-19. (ECF No. 106 at 10.) Mims provides Dr. Homer Venters's ("Venters") assessment of FCI Danbury, which determines: (1) the facility has a heightened risk for exposure, acquisition, transmission, and clinical complications of infectious diseases, because it is virtually impossible to adhere to social distancing guidelines; (2) inmates have limited supply of basic hygiene products and cannot properly decontaminate surfaces, (3) there are too many shared spaces, including toilets, showers, and mess halls; and (4) there is a high turnover rate in the inmate population and mixing between staff and inmates. (*Id.* at 10–11.) Mims contends the BOP is unable to control the spread of COVID-19 in its facilities, where the number of confirmed cases and positive rates are high, and the policies and practices to contain COVID-19 transmission are insufficient. (*Id.* at 12–16.) The Court disagrees.

On the second component, "a court may consider the conditions at the defendant's facility" "to determine whether compassionate release is appropriate amid the COVID-19 crisis." *United States v. Desciscio*, Crim. A. No. 88-239, 2020 U.S. Dist. LEXIS 121335, at *16 (D.N.J. July 9, 2020). "[C]ourts have denied relief to inmates with" medical conditions presenting an increased risk for severe illness or complications from COVID-19, "if BOP is meeting their medical needs and has reasonable measures in place to prevent the spread of the virus." *Adams*, 2020 U.S. Dist. LEXIS 190133, at *14 (citations omitted).

Mims cannot challenge the effectiveness of the BOP's measures against COVID-19 transmission with the expert report by Venters, which is an inadmissible hearsay. A district court should not "admit prior testimony of an expert hired by a party in a subsequent trial where the expert did not testify." *Horizon Park Partners LLC v. Gator Horizon Partners Ltd.*, Civ. A. No. 13-31577, 2014 Colo. Dist. LEXIS 2696, at *4 (D. Colo. Nov. 28, 2014) (citing *Kirk v. Raymark Indus.*, 61 F.3d 147 (3d Cir. 1995)); *see also Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816, 827 (D. Del. 2018) (citing *Ochoa-Valenzuela v. Ford Motor Co.*, 685 F. App'x 551, 554 (9th Cir. 2017)) ("[T]he use of testimony from another expert who did not testify in this trial constitutes admission of inadmissible hearsay.") This is so even if the prior testimony is elicited in a subsequent related litigation. *Horizon Park*, 2014 Colo. Dist. LEXIS 2696, at *6–7. Here, the expert report was prepared by Venters for another case, *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411 (D. Conn. 2020). (ECF No. 106-1 at 8, 14.) Also, Venters did not testify before this Court. Therefore, Venters' report is inadmissible here, and is not entitled to consideration.

Even if the report is admissible, it carries less weight than the evidence provided by the BOP concerning its measures against COVID-19 transmission. The report is based on Venters' inspection of FCI Danbury on May 27, 2020. (*Id*. at 7–8.) During the five months between the inspection and Mims' filing of this motion, the parties in *Martinez-Brooks* settled in September 2020, when FCI Danbury made several commitments aimed at preventing the spread of COVID-19 in its facility. (ECF No. 106 at 9.) Therefore, the inspection conducted by Venters five months ago, which formed the factual basis of his report, may not reflect the situation at FCI Danbury upon Mims' filing of this motion. Accordingly, even if admitted, Venters' report is entitled to less weight.

8

Though the parties dispute whether FCI Danbury sufficiently followed its commitments (*see id.*; ECF No. 107 at 5, 10; ECF No. 110 at 17), the following statistical data suggest the measures taken at FCI Danbury are reasonably effective. By the time this motion was filed, FCI Danbury had one inmate death, four active inmate cases, and one active staff case. (ECF No. 106 at 4.) As of June 10, 2021, FCI Danbury had no active inmate or staff cases, and almost all the inmates have been tested for COVID-19.[3] These numbers do not suggest a significant risk of COVID-19 infection at the facility. *See United States v. Mason*, Crim. A. No. 17-191, 2020 U.S. Dist. LEXIS 206974, at *3 (D.N.J. Nov. 5, 2020) ("FCI Schuylkill has zero confirmed active cases of Covid-19 among inmates, but three confirmed active cases among staff at the time of this writing, suggesting the facility has been able to successfully prevent the spread of the virus among the inmate population."); *United States v. Tatar*, Crim. A. No. 07-459, 2020 U.S. Dist. LEXIS 205659, at *5 (D.N.J. Nov. 2, 2020) (finding that the three active inmate cases at the facility, which held a total of 1,070 inmates, were insufficient to show extraordinary and compelling reasons for compassionate release); *United States v. Zaffa*, Crim. A. No. 14-50-4, 2020 U.S. Dist. LEXIS 115308, at *7 (D.N.J. June 29, 2020) (recognizing the effectiveness of the preventive steps taken at MDC Brooklyn, which had 11 confirmed active cases); *c.f. United States v. Urzua*, Crim. A. No. 16-312, 2020 U.S. Dist. LEXIS 240532, at *2 (D.N.J. Dec. 22, 2020) (finding that "Fort Dix was experiencing an outbreak of Covid-19 among inmates and staff," when there were "17 confirmed active cases among inmates and 18 confirmed active cases among staff"); *United States v. Graham*, Crim. A. No. 06-478, 2020 U.S. Dist. LEXIS 203939, at *6 (D.N.J. Nov. 2, 2020) (finding that the risk of COVID-19 transmission was not insignificant and supported a finding of compelling and

---

[3] BOP, *COVID-19 Update* (last visited June 10, 2021), https://www.bop.gov/coronavirus/.

extraordinary reasons, when the prison facility had at least one active inmate case and sixteen staff member active cases). Though FCI Danbury had one death case and a "history of COVID-19 infections," the low number of current active cases suggests "the virus now appears to be relatively under control at the institution." *United States v. Iorio*, Crim. A. No. 08-413, 2020 U.S. Dist. LEXIS 140238, at *6 (M.D. Pa. Aug. 6, 2020) (declining to find extraordinary and compelling circumstances when one prisoner and two staff members recently tested positive at FCI Danbury). By the time this motion was filed, FCI Danbury had over eighty recovered inmate cases, and over sixty recovered BOP staff cases. (ECF No. 106 at 4.) Because the vast majority of inmates and staff who contracted COVID-19 have recovered, FCI Danbury's history of COVID-19 infections does not constitute an extraordinary or compelling reason for compassionate release. *See Adams*, 2020 U.S. Dist. LEXIS 190133, *15 (citation omitted) (finding that "the presence of COVID-19" was not "an extraordinary or compelling reason in favor of [d]efendant's release," because "[w]hile there ha[d] been at least one hundred cases at the facility, it appear[ed] that the vast majority of inmates and staff ha[d] recovered, none ha[d] died, and only a small number of active cases remain[ed]").

### 2. FCI Danbury Provides Reasonable Medical Care for Mims

The Government asserts, at FCI Danbury, Mims is enrolled in a chronic care management program, where he regularly receives monitoring and medication for his asthma and hypertension, for which Mims failed to get treatment prior to his incarceration. (ECF No. 107 at 5, 10.) Mims does not dispute the above medical care he receives.

An inmate's illnesses do not constitute "extraordinary and compelling reasons that would justify his compassionate release," where the facility was providing adequate care. *United States v. Gore*, Crim. A. No. 10-250, 2020 U.S. Dist. LEXIS 122109, at *12–14 (D.N.J. July 13, 2020);

*see also United States v. Wax*, Crim A, No. 14-251, 2020 U.S. Dist. LEXIS 111380, at *7–8 (D.N.J. June 25, 2020) (denying the defendant's motion for compassionate release, even though he suffered from hypertension and obesity, because he was receiving "regular and consistent medical care" at the prison facility); *United States v. Alexander*, Crim. A. No. 19-32, 2020 U.S. Dist. LEXIS 85609, at *9–10 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity, because the BOP was adequately managing the defendant's medical care, including treating the defendant's hypertension which was previously untreated). Therefore, Mims's medical conditions do not subject him to a heightened health risk at FCI Danbury.

### 3.   The Statistical Data Provided by the Government Are Relevant in Determining the Effectiveness of the BOP's Measures

The Government presents statistical data showing the COVID-19 mortality rates in the BOP facilities and FCI Danbury are much lower than those in the entire New Jersey and Essex County, where Mims seeks to be released.[4] (ECF No. 107 at 8.) Mims disagrees with the Government's statistical analysis, contending: (1) the population at FCI Danbury is much smaller than Essex County and New Jersey, which creates a margin of error too high to have confidence in any proportional analysis; (2) the data are antiquated and cannot be used make a current argument, because they largely reflect the situation in late April and May, when the majority of COVID-19 related deaths in New Jersey occurred; and (3) the data only account for mortality,

---

[4] Accordingly to the Government's data, the COVID-19 mortality rates as a percentage of the total population for BOP inmates (0.1%, or 134 deaths with a total population of 125,421) and for the inmates at FCI Danbury (0.11%, or 1 death with a total population of 885) are lower than those in New Jersey (0.18%, or 16,429 deaths with a population of 8.882 million) and Essex County (0.27%, or 2,153 deaths with a total population of 798,275). The COVID-19 mortality rates as a percentage of all the cases that contract COVID-19 in the BOP (0.64%, or 136 deaths with 21,097 cases) and at FCI Danbury (1.2%, or 1 death with 81 cases) are lower than those in New Jersey (6.4%, or 16,429 deaths with 256,000 cases) and Essex County (7.8%, 2,153 deaths with 27,456 cases).

11

without considering the risk of infection. (ECF No. 108 at 3.) Mims asserts it is absurd and illogical to state a defendant is safer in prison during the COVID-19 pandemic. (*Id*.) The Court disagrees.

First, though the data do not consider the risk of infection, it may only reduce the data's evidentiary value. After all, the data still allow comparing the COVID-19 mortality rate at prison facilities with that of outside, which may reflect the effectiveness of a facility's preventive and treatment measures against COVID-19.

Second, statistical significance is not a prerequisite for the admissibility of evidence, though it may affect the weight of the evidence. *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (citations omitted) ("In certain cases, failure to perform a statistical adjustment [to find statistical significance] may simply diminish the weight of an expert's finding. The question of whether a study's results were properly calculated or interpreted ordinarily goes to the weight of the evidence, not to its admissibility."); *In re Urethane Antitrust Litig.*, 166 F. Supp. 3d 501, 509 (D.N.J. 2016) (citations omitted) ("[T]he statistical significance issues go to the weight of the models, not their admissibility."). Therefore, even if the much smaller population at FCI Danbury means any comparison of its COVID-19 mortality rate with that of Essex County or New Jersey would lack statistical significance, it does not render such a comparison irrelevant. Moreover, the total population of the BOP prisoners (125,421) is large enough for a statistically meaningful comparison with that in Essex County (with a population of 798,275), and this comparison shows the mortality rate of the BOP inmates (0.1%) is much lower than that of the population in Essex County (0.27%). (ECF No. 107 at 8.)

Third, though Mims's argument that the Government's data are too antiquated to support a current assessment of prison facilities has merits, it is only an interpretation of the data that "goes to the weight of the evidence, not to its admissibility." *Karlo*, 849 F.3d at 83. Such an argument is

12

also self-defeating. If the evidentiary value of the Government's data is diminished because they largely reflect what occurred in late April and May rather than when Mims' motion was filed, then the evidentiary value of Venters's report is also diminished, because the report is based only on an on-site inspection in May.

Fourth, whether FCI Danbury is safer from COVID-19 than the outside is not dispositive to the compassionate release determination. The Court does not discern, and Mims does not provide, any legal authority suggesting the prison facility in question must be found safer than the outside before concluding reasonable measures have been taken to protect the inmates from COVID-19, so that a compassionate release is unwarranted. On the contrary, even if the infection and death rates in a prison facility are higher than outside, as long as they "do[] not rise above the level of a generalized concern about the possibility of infection," the higher rates are "not sufficient to support a finding of extraordinary circumstances at [the prison facility]." *Dunich-Kolb*, 2020 U.S. Dist. LEXIS 208120, at *10. Moreover, contrary to Mims's assertion, a prison facility can be safer for an inmate than the place the inmate wishes to be released. *See United States v. Welton*, Crim. A. No. 18-487, 2020 U.S. Dist. LEXIS 215660, at *17 (D.N.J. Nov. 17, 2020) (finding that a prison facility was statistically safer for the defendant than Essex County, where the defendant wished to be released); *Zaffa*, 2020 U.S. Dist. LEXIS 115308, at *7 ("[G]ranting [the inmate's] request to be released to his mother's house in Atlantic City, New Jersey could place him at greater risk of contracting COVID-19 than the risk he currently faces.").

Therefore, the mortality rate comparisons based on the Government's data are relevant evidence in showing the BOP has taken reasonable measures against COVID-19 transmission.

    **4.    The Conditions of Other Facilities and Inmates Cannot Determine Mims' Case for Compassionate Release**

Mims relies on a set of data and studies of the BOP inmates in general and those in facilities other than FCI Danbury, to show he has a heightened risk of suffering from COVID-19 at FCI Danbury. (ECF No. 106 at 10–17.) In particular, Mims alleges two nearby facilities, FCI Fort Dix and FDC Philadelphia, provide examples to show the BOP's action plan is ineffective and its data are not reliable. (ECF No. 108 at 8.) The Court finds these showings irrelevant.

"[T]he determination of whether an inmate should be granted compassionate release is an individualized inquiry and those cases, which involve other individuals residing in wholly different facilities, are not factually comparable." *Wax*, 2020 U.S. Dist. LEXIS 111380, at *8; *see also United States v. Catanzarite*, Crim. A. No. 18-0362, 2020 U.S. Dist. LEXIS 94478, at *9–10 (D.N.J. May 29, 2020) ("[T]he [c]ourt must conduct a highly individualized inquiry of this [d]efendant to determine whether COVID-19 in conjunction with his alleged underlying medical conditions constitutes an extraordinary and compelling reason for release."). As a result, Mims cannot rely on the examples of two different facilities, *i.e.*, FCI Fort Dix and FDC Philadelphia, to evaluate the action plan implementation and the reliability of data reporting at FCI Danbury. What is happening with other facilities and inmates does not necessarily occur to Mims in FCI Danbury, and therefore cannot determine Mims' case for compassionate release.

Accordingly, the Court does not find, Mims has not demonstrated, compelling and extraordinary reasons to justify his compassionate release. As a result, the Court "will not consider the applicable factors set out in Section 3553(a)." *United States v. McDonald*, Crim. A. No. 09-656, 2020 U.S. Dist. LEXIS 117709, at *7 n.4 (D.N.J. July 2, 2020) (citing *United States v. Viteri*, Crim. A. No. 19-044, 2020 WL 3396804, at *5 n.7 (D.N.J. June 19, 2020)); *see also United States v. Williams*, Crim. A. No. 17-344, 2020 U.S. Dist. LEXIS 152610, at *6 (D.N.J. Aug. 24, 2020) ("Because [the defendant] has not demonstrated that he has exhausted his administrative remedies

nor has he established that extraordinary and compelling reasons justify a sentence reduction, the [c]ourt need not address the § 3553(a) factors or dangerousness considerations."); *United States v. Mayfield*, Crim. A. No. 07-801, 2020 U.S. Dist. LEXIS 92031, at *9 (D.N.J. May 27, 2020) ("[T]he [c]ourt finds that [d]efendant has failed to demonstrate 'extraordinary and compelling reasons' to justify a compassionate release. As such, the [c]ourt need not evaluate whether a modification of [d]efendant's sentence would be appropriate under the § 3553(a) factors.").

### IV. CONCLUSION

For the reasons set forth above, Mims' Motion for Compassionate Release is **DENIED**. An appropriate order follows.


**Date: September 7, 2021**　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**